## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| SHEILA FRANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 04-cv-221-P-S |
| | ) | |
| L.L. BEAN INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANT'S MOTION TO
## DISQUALIFY AND FOR SANCTIONS

SINGAL, Chief District Judge

Before the Court is Defendant L.L. Bean's Motion to Disqualify and for Sanctions (Docket # 15). Defendant argues that Plaintiff violated the Maine Bar Rules and the Local Rules for the District of Maine by conducting an ex parte interview with a former L.L. Bean employee and disclosing confidential settlement information. Defendant requests that the Court impose sanctions against Plaintiff and disqualify Plaintiff's counsel. The Court heard oral argument in this matter on May 5, 2005. For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendant's Motion.

## I. BACKGROUND

The factual basis for Defendant's Motion is an ex parte interview conducted by Plaintiff's counsel with former L.L. Bean employee Mark Allen. Mark Allen was Plaintiff's former supervisor at L.L. Bean, and Plaintiff alleges in her Complaint that he failed to take reasonable steps to address his supervisor's sexual harassment of Plaintiff.

1

(<u>See</u> Am. Compl. (Docket # 2) ¶ 23.)   Plaintiff also alleges that in response to her complaints of harassment, Mark Allen himself began to harass Frank on "an almost daily basis."  (<u>See</u> <u>id.</u> at ¶ 25.)  Plaintiff argues that L.L. Bean is vicariously liable for Mark Allen's harassing conduct.  (<u>See</u> <u>id.</u> at ¶ 122.)

Plaintiff's counsel did not disclose to Defendant that they had conducted the interview.  (<u>See</u> Lowe Aff. (Docket # 15, Ex. 1) ¶ 6.)  Nor did they show Mark Allen a copy of the Complaint or otherwise disclose to Mark Allen that Plaintiff had accused him of complicity in the harassment.  (<u>See</u> Allen Aff. (Docket # 17, Ex. 1) ¶ 4.)  It is not clear from the evidence before the Court exactly what was discussed at the ex parte interview. However, Defendant alleges that during the interview, in an apparent attempt to convince Mark Allen that L.L. Bean had done something wrong, Sheila Frank disclosed the position L.L. Bean had taken at a confidential mediation.  (<u>See</u> Allen Aff. ¶ 5; Lowe Aff. ¶¶ 8–9.)  For her part, Ms. Frank does not deny that the ex parte interview took place, but claims she does not remember either revealing L.L. Bean's settlement offer to Mark Allen or being told that the mediation was confidential.  (<u>See</u> Frank Aff. (Docket # 16, Ex. 1) ¶¶ 1, 3.)

At the time of the ex parte interview, Mark Allen was not independently represented by counsel.

## II.  ANALYSIS

### A.  Ex Parte Contact with Mark Allen

Under Local Rule 83.3(d)(2), acts or omissions by an attorney admitted to practice before the United States District Court for the District of Maine that violate the

Maine Code of Professional Responsibility constitute misconduct and are grounds for discipline.  D. ME. R. 83.3.  At issue in this case is Maine Bar Rule 3.6(f), which states:

> (f)  *Communicating With Adverse Party*.  During the course of representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

ME. BAR R. 3.6(f).  Although Defendant's brief implies that the rule is aimed at ensuring the presence of opposing counsel at interviews with witnesses whose conduct is at issue in the litigation, the plain language of the rule makes it clear that the rule is intended to ensure notice to the *witness's* attorney, if any.  Where a witness is not represented by an attorney, a party is under no obligation whatsoever to inform anyone of contact with the witness.

Thus, in order for Defendant to succeed in its Motion for Sanctions, it must demonstrate that Mark Allen, a *former* employee of L.L. Bean at the time of the interview, was somehow within the scope of Defense Counsel's representation of its client, L.L. Bean.  They cannot make such a showing.

The District of Maine has dealt with this issue of *ex parte* communications with employees of an opposing party twice in recent years.  Neither case provides any support for Defendant's position in this matter.  In Gavett v. Bo-Ed, Inc., No. 96-cv-369-P-H, slip op. (D. Me Dec. 1, 1997), available at http://www.med.uscourts.gov/Opinions/Cohen/ 1997/dmc_2-96cv369_gavett_v_bo-ed_doc31_dec.pdf, the Magistrate Judge found that counsel for the plaintiff came close to violating Rule 3.6(f) by obtaining information about the defendant's personnel policy from a *current* employee of the defendant.  Id. at 2.  The defendant used the information gleaned from this interview to pose

knowledgeable questions to the defendant's personnel director at a deposition.  Id. at 2–3. Implying that counsel might have come close to the ethical line, the Magistrate Judge nonetheless declined to find a violation, reasoning that since the promulgation of the personnel policy was not within the scope of the witness's employment, the information sought by counsel from her could not have constituted an admission by Defendant that would be admissible in court.  Id. at 5–6.  The Magistrate Judge went on to note that the difference between promulgating a personnel policy, which was outside the witness's scope of employment, and making personnel decisions, which was within the witness's scope of employment, may seem "microscopic," but such distinctions are necessary given the likely impact of sanctions on both the current litigation and future cases.  Id. at 6.

Hence, Gavett's holding does not appear to support Defendant's position in this case per se.  However, Defendant seizes upon Gavett's quotation of an Eighth Circuit case finding that a similar rule in Missouri prohibited ex parte contact with

> (1) persons having managerial responsibility on behalf of the organization, (2) persons whose acts or omissions in connection with the matter litigated may be imputed to the organization, and (3) persons whose statements may constitute an admission on the part of the organization.

Gavett, slip op. at 4 (quoting Hill v. St. Louis Univ., 123 F.3d 1114, 1121 (8th Cir. 1997)).  Defendant interprets Gavett as endorsing the Hill factors, and goes on to argue strenuously that Mark Allen is a "person[] whose acts or omissions in connection with the matter litigated may be imputed to the organization," and is therefore within the purview of Rule 3.6(f).  (See Mot. to Disqualify and for Sanctions (Docket # 15) at 4–5.)

Defendant's citation to Gavett for this purpose is unconvincing.  First, both Gavett and Hill addressed ex parte contact with a *current* employee of the defendant.  Second, Gavett did not specifically endorse the factors set forth in Hill, but merely noted them as

an example of how other jurisdictions have interpreted similar rules.  Third, the source for the factors set forth in <u>Hill</u> — the commentary to Rule 4.2 of the Model Rules of Professional Conduct[1] — now explicitly states that ex parte communication with the former employee of an adverse party is permissible.  According to the commentary adopted for the 2004 revision of the Model Rules, consent of opposing counsel is required for ex parte contact with a current employee falling into categories substantially similar to those set forth in <u>Hill</u> and <u>Gavett</u>.  However, "[c]onsent of the organization's lawyer is not required for communication with a *former* constituent."  MODEL RULES OF PROF'L CONDUCT R. 4.2 cmt. (2004) (emphasis added).  There is nothing in <u>Hill</u> or <u>Gavett</u> to suggest that either court would disagree with this statement in the Rule 4.2 commentary.

In the more recent <u>Crowley v. L.L. Bean, Inc.</u>, 143 F. Supp. 2d 38 (D. Me. 2001), Judge Carter ruled that plaintiff's counsel did not violate Maine Bar Rule 3.6 by interviewing a number of current and former employees that were witnesses to a pattern of sexual harassment by another employee.  <u>Id.</u> at 42 n.2.  Judge Carter found that current employees could be contacted *ex parte* by counsel unless they "have responsibility for making decisions on the litigation and matters directly related to it" or "have the responsibility of communicating [company] policy and decisions to its attorney, receiving the attorney's advice in the first instance, and directing the work of the [company's] staff in preparing for litigation."  <u>Id.</u>  As for former employees, Judge Carter was entirely dismissive of L.L. Bean's position, holding without elaboration that "there is certainly no

---

[1] The current Model Rule 4.2 states:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  MODEL RULES OF PROF'L CONDUCT R. 4.2 (2004).

violation of the rule with respect to Crowley securing the statement of . . . former L.L. Bean employees." Id.   In short, Crowley provides clear support for Plaintiff's position that former employees, as well as many current employees, are not within the scope of an attorney's representation of an employer.

Both Gavett and Crowley looked to the opinions of the Maine Professional Ethics Commission of the Bar for guidance as to the precise scope of the contacts prohibited by Rule 3.6(f).   In Opinion # 94, the Commission considered permissible contacts with employees of a municipal corporation, a context — as noted by Judge Carter — that is indistinguishable from a private corporation.  Id.  Opinion # 94 states the purpose of Rule 3.6(f) as follows:

> [T]o prevent improvident settlements and similarly major capitulations of legal position on the part of a momentarily uncounseled, but represented, party and to enable the corporation's lawyer to maintain an effective lawyer-client relationship with members of management.

Opinion # 94, Prof'l Ethics Comm'n of the Bd. of Overseers of the Bar (Feb. 24, 1989) (citing  C.  Wolfram,  MODERN  LEGAL  ETHICS  613  (1986)),  available  at www.mebaroverseers.org/Ethics Opinions/Opinion 94.htm.  The Commission concedes the difficulty of operationalizing this purpose into a self-executing legal test.  However, it attempts to do so by setting forth the following test:

> Rule 3.6[(f)] will bar contact between counsel representing a party opposed to the municipality in a litigated matter and those officials of the municipality who have the responsibility of making decisions on the litigation and matters directly related to it . . . . [T]he rule will also bar contact with those other officials, if any, who have the responsibility of communicating municipal policy and decisions to its attorney, receiving the attorney's advice in the first instance, and directing the work of the municipality's staff in preparing for litigation.

Id.  The Commission continues:

> We do not anticipate that this class will invariably include the employees whose conduct is involved in the litigation.  They are witnesses as well as employees, subject to being interviewed, unless they are in the category of officials who will be deemed to represent the municipality or unless they are separately represented by counsel in the matter.

Id.  It is self-evident that a former employee is entirely outside the scope of representation suggested by the commission.  A former employee cannot be characterized as "a member of management," and certainly has no responsibilities or duties to the corporation regarding the litigation.  Nor can he or she be deemed in any way to represent the corporation or be capable of making any admissions or "major capitulations" on behalf of the corporation.

In support of its argument that former employees can be within the scope of representation, Defendant cites Kaiser v. AT&T, Docket no. 00-724-PHX-JWS, 2002 U.S. Dist. LEXIS 25768 (D. Ariz. Apr. 5, 2002).  In Kaiser, the court found that Arizona Rule 4.2, a rule indistinguishable from the Maine rule, prohibited contacts with former employees "whose acts or omissions gave rise to the underlying litigation." Id. at *19– *20.  The Court disqualified Plaintiff's counsel for conducting an ex parte interview with a former employee that fell under this definition.  Id. at *30.  The Court reasoned that ex parte contacts between a potentially disgruntled former employee and opposing counsel was likely to result in disclosure of confidential or privileged information.  Id. at *20. The Court also concluded that such ex parte contacts could "taint the judicial system" with "the appearance of impropriety."  Id.

In another decision cited by the Defendant, Armsey v. Medshares Mgmt. Servs, Inc., 184 F.R.D. 569 (D. Va. 1998), a Magistrate Judge reached a similar conclusion.  In that case, the plaintiffs sought approval from the Magistrate Judge to conduct ex parte

interviews with former employees whose allegedly wrongful actions could be imputed to the defendant.  Id. at 570.  Declining to follow a Virginia Legal Ethics Opinion which held that former employees were not within the scope of representation, the Magistrate Judge reasoned that even though the former employees could not make admissions that bound the corporation, they could admit to actions for which the corporation would be vicariously liable.  Id. at 574.  The Magistrate Judge held that the potential for these employees to make statements damaging to the corporation placed them within the scope of representation.

Kaiser and Armsey certainly support the Defendant's position in this case. However, the Court is unpersuaded by their reasoning.  Neither case addresses why the onus should not be on counsel for the witness's former employer to offer him or her counsel.  Such efforts could be undertaken by defense counsel as a matter of course when a plaintiff seeks to hold a corporate defendant vicariously liable for the wrongful acts of a former employee.  In addition, the Court believes the concern expressed in Kaiser that a former employee may disclose privileged or confidential information is overstated. Presumably, a defendant employer would have legal recourse against a former employee that disclosed truly privileged or confidential information.  Finally, and perhaps most importantly, it is unclear how the rule adopted in Kaiser and Armsey, however wise, can be justified in the face of the plain text of the Maine Bar Rule 3.6(f), which prohibits ex parte communication only when the witness is represented by counsel.  These cases do not explain how a former employee — who has presumably severed all other ties with his former employer — could nonetheless be considered to be represented by counsel for that employer.

8

It should be clear from the above discussion that Defendant's argument for sanctions under Maine Bar Rule 3.6(f) falls well short of the mark. To the extent Maine courts have considered this issue, they clearly favor a narrower interpretation of Bar Rule 3.6(f) than Defendant advocates. Even <u>Gavett</u>, the case cited by Defendant in support of its position, cannot be reasonably understood as providing any support to the argument that ex parte contacts with unrepresented former employees may be subject to the rule, particularly since an unquoted portion of the Model Rules commentary indirectly cited in that case clearly states that former employees are not subject to the rule against ex parte communications unless they are independently represented by counsel. Therefore, Plaintiff's request for sanctions and disqualification on these grounds must be denied.

### B.  Violation of Confidentially Agreement

Sheila Frank's alleged violation of the confidentiality agreement by informing Mark Allen of Defendant's settlement position is more troubling. Defendant has submitted affidavits by Mark Allen and Attorney Peter Lowe attesting that such a violation occurred. (<u>See</u> Allen Aff. ¶ 5, Lowe Aff. ¶¶ 8–9.) For her part, Frank does not deny the allegation, but merely claims that she does not remember disclosing such information. (<u>See</u> Frank Aff. ¶ 1.) After reviewing the record and listening to representations of counsel at oral argument, the Court sees no reason to disbelieve Mark Allen's sworn statement, particularly given Plaintiff's inability to deny it. Hence, the Court finds that the alleged disclosure did, in fact, occur.

District of Maine Local Rule 83.11(d) reads in part:

All ADR processes are confidential. Thus, no disclosure shall be made to anyone, including any judicial officer not serving as a neutral in the

matter, of any confidential dispute resolution communication that in any respect reveals the dispute resolution positions of the parties or advice or opinions of neutrals.

D. ME. R. 83.11.  By revealing L.L. Bean's settlement position to a potentially key witness in an attempt to convince the witness of the strength of her case, Frank not only violated the rule, but violated it in a way that strikes at the heart of the rule's purpose. Parties will not feel free to engage in candid settlement talks if they fear that their positions can be later used in attempts to turn witnesses against them.

Although the First Circuit has not set forth a framework for analyzing the appropriateness and severity of sanctions in a case where confidential settlement information is disclosed, the Fourth Circuit has suggested that the factors a Court should weigh in such a case include:

> (1) whether the mediator explained the extent of the confidentiality rules, and the clarity of such explanation; (2) whether the parties executed a confidentiality agreement; (3) the extent of willfulness or bad faith involved in the breach of confidentiality Rule; (4) the severity or adverse impact of the disclosure on the parties or the case; and (5) the severity or adverse impact of the disclosure on the mediation program.

In re Anonymous, 283 F.3d 627, 635 (4th Cir., 2002) (citing ROBERT J. NIEMIC ET AL., GUIDE TO JUDICIAL MANAGEMENT OF CASES IN ADR 104 (Federal Judicial Center 2001)). At noted in the citation, these factors were adopted in large part from the Federal Judicial Center's *Guide to Judicial Management of Cases in ADR*.  That guide suggests that if the Court determines that sanctions are warranted, appropriate sanctions might include:

> [O]ral admonition, written reprimand, the assessment of attorney's fees, the assessment of costs of the mediation process, or mandatory training in mediation techniques and ethics.

NIEMIC, supra, at 104.

Defendant points to a Southern District of New York case in which the court imposed a $2,500 sanction on plaintiff's counsel for disclosing the amount of two settlement offers made by the defendants, as well as other information about the mediation to the presiding judge.  See Bernard v. Galen Group, Inc., 901 F. Supp. 778, 782–84 (S.D.N.Y. 1995).  In that case, the court concluded that the $2,500 sanction was warranted because Plaintiff's counsel "violated my order and the confidentiality provisions willfully and deliberately, that he did so in an effort to undermine the mediation process in this case, and that the violation was serious and egregious."  Id.  In another case cited by Defendant, a Magistrate Judge recommended a $1,500 sanction and public reprimand for an attorney's willful filing of a confidential settlement statement with the court in a related bankruptcy proceeding.  See Davis v. Kansas City Fire & Marine Ins. Co., 195 F.R.D. 33, 38 (N.D. Okla. 2000).

In this case, an analysis of the factors set forth in In re Anonymous leads inevitably to the conclusion that some type of sanction is warranted.  First, it is clear that a confidentiality agreement existed between the parties.  Defense counsel affirms that he signed a confidentiality agreement at the end of the mediation.  (See Lowe Aff. ¶ 8.)  It can be assumed that Plaintiff or her counsel signed such an agreement as well.  Defense counsel's claim that the parties agreed that the settlement would be confidential at the time of the mediation is not disputed by Plaintiff.  Furthermore, the Local Rules are clear that all ADR processes are confidential.  See D. ME. R. 83.11(d).

The extent to which the mediator explained the confidential nature of the settlement negotiations is unclear from the record.  However, at oral argument, counsel for the Plaintiff acknowledged that she personally notified Plaintiff that the settlement

negotiations were confidential.  (May 5, 2005 Hearing Tr. at 31 ("I can represent to the Court, I know that I did tell the client that this is confidential").)  Thus, regardless of what the mediator told the parties, there can be no doubt that Plaintiff had actual notice that she was not to disclose information regarding the mediation.  Counsel's admission also leads the Court to conclude that Plaintiff's breach of the confidentiality agreement was willful and in bad faith.

As noted above, disclosure of the confidential information also has consequences for the mediation program, since disclosure of confidential settlement positions in an attempt to influence witnesses will deter future parties in settlement negotiations from engaging in candid negotiations.

The only factor which cuts against the Defendant is "the severity or adverse consequences of the breach."  In re Anonymous, 283 F.3d at 635.   Defendant has not presented the Court with evidence that Plaintiff's disclosure resulted in prejudice to L.L. Bean.  Defendant's vague and unsupported allegations that the disclosure "tainted" the witness (Tr. at 18) are insufficient to establish that it has been materially prejudiced by the disclosure.

Thus, four of the five In re Anonymous factors weigh heavily in favor of imposing sanctions upon the Plaintiff for her violation of the confidentiality agreement and Local Rule 83.11(d).  The fact that Defendant cannot demonstrate prejudice does not ameliorate the need for sanctions.  It is essential for the effectiveness of mediation in this district that all but the most *de minimis* breaches of confidentially, whether perpetrated by the opposing party or her counsel, be punished with sanctions.  In a case such as this one, where the breach of confidentiality was willful, the Court believes that a strong deterrent

is necessary.  Therefore, the Court will impose a $1,000 sanction upon Plaintiff, payable to Defendant to partially compensate it for both the costs of the mediation and the present motion for sanctions.  The Court further admonishes Plaintiff and her counsel that any further ethical lapses will not be tolerated.

Because the Defendant is unable to demonstrate any prejudice to its position in this litigation, the Court will not grant Defendant's request that Plaintiff be barred from using any fruits of the ex parte interview in the litigation.  (Tr. at 38.)  Had Defendant been able to demonstrate such prejudice, such a sanction might have been an appropriate remedy to counteract Plaintiff's ill-gotten advantage.   However, in absence of such a showing, the Court will not interfere with Plaintiff's right to press her claims using all admissible evidence.

## III.  CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion to Disqualify and for Sanctions.  Defendant's request for disqualification of Plaintiff's counsel is DENIED.  Defendant's request for sanctions is GRANTED.  Plaintiff is hereby ORDERED to pay $1,000 to Defendant L.L. Bean, said amount to be paid within ten (10) days.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 11th day of May, 2005.